UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

WESTCHESTER FIRE
INSURANCE COMPANY,
a Pennsylvania corporation,

      Plaintiff,

vs.

PANTERRA DEVELOPMENTS,
a Florida general partnership,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, WESTCHESTER FIRE INSURANCE COMPANY ("WFIC"), hereby sues the Defendant, PANTERRA DEVELOPMENTS ("PANTERRA"), and alleges:

### JURISDICTION AND VENUE

1.     This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§2201 and 2202.

2.     Subject matter jurisdiction is based on 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy is in excess of $75,000.00, exclusive of costs, interest and attorneys' fees.

3.     Plaintiff WFIC is a corporation organized and existing pursuant to the laws of the State of Pennsylvania, whose principal place of business is located in Philadelphia, Pennsylvania. WFIC is duly registered and authorized to do business in the State of Florida.  WFIC is a citizen of the State of Pennsylvania.

CASE NO. _____

4.      Defendant PANTERRA is a general partnership organized and existing pursuant to

the laws of the State of Florida, whose principal place of business is located in Miami, Florida.

PANTERRA is a citizen of the State of Florida.

5.      Venue is proper in this Court because PANTERRA has its principal place of business

in Miami-Dade County, Florida, and the construction project at issue in this case was performed in

Miami-Dade County, Florida, where this cause of action arises.

## GENERAL ALLEGATIONS

### *The Owner and the Project*

6.      PANTERRA is the owner of a mixed-use development project commonly known as

the "City 24 Project" located at 350 Northwest 24th Street, Miami, Florida (the "Project"), consisting

of 119 residential units and 19,244 square feet of office/retail areas with a total of 181 parking

spaces.

7.      PANTERRA is a Florida general partnership, consisting of the following partners:

a.      Barg-Loft Holdings, Inc., a Florida corporation;

b.      Paul-Loft Holdings, Inc., a Florida corporation;

c.      TS Miami, LLC, a Florida limited liability company;

d.      AEDN Cayloft, Inc., a Florida corporation; and

e.      Blackstone Development Consultants, Inc. ("Blackstone"), a Florida
corporation.

-2-

CASE NO. _____

A true and correct copy of the *Agreement of Partnership* dated July 13, 2004 is attached hereto and made a part hereof as **Exhibit "A"**.[1]

8.     At all times material hereto, Blackstone was one of the general partners of PANTERRA.

9.     At all times material hereto, Ricardo Mucenic ("Mucenic") was the sole subscriber, director, and authorized representative of Blackstone.

10.     At all times material hereto, Barry Goldlist ("Goldlist") was the principal officer, director, and authorized representative of Barg-Loft Holdings, Inc. and  Paul-Loft Holdings, Inc.

***The Construction Contract***

11.     On or about May 4, 2005, PANTERRA, as owner, entered into an AIA Document A111 – 1997 contract (the *"Contract"*) with Soares Da Costa CS, LLC ("SDC"), as general contractor, to construct the Project.   PANTERRA and SDC incorporated the AIA Document A201 – 1997, "General Conditions of the Contract for Construction" (the *"General Conditions"*) into the *Contract*. A true and correct copy of the *Contract* with incorporated *General Conditions* is attached hereto and made a part hereof as **Exhibit "B"**.[2]

12.     On or about March 14, 2006, PANTERRA and SDC entered into an *Amended Contract*, a true and correct copy of which is attached hereto and made a part hereof as **Exhibit "C"**.[3]

---

[1]  To the extent that this Exhibit is incomplete, same is already in the possession of PANTERRA.

[2]  *See fn.* 1.

[3]  *See fn.* 1.

CASE NO. _____

### *The Performance Bond - Conditions and Duties*

13.     On March 8, 2006, WFIC issued Performance Bond No. K07347935, on behalf of

SDC, as principal, and identifying PANTERRA as obligee (the "*Bond*") in connection with the

*Amended Contract*.  The penal sum of the *Bond* is $24,775,802.00.  A true and correct copy of the

*Bond* is attached hereto and made a part hereof as **Exhibit "D"**.

14.     As a condition precedent to triggering WFIC's obligations under the *Bond*,

PANTERRA must not be in default under the *Amended Contract*.  The *Bond* states, in pertinent part:

> 3. *If there is no Owner Default*, the *Surety's obligation under this Bond shall arise after*:
>
> 3.1 The *Owner has notified the Contractor and the Surety . . . that the Owner is considering declaring a Contractor Default* and has requested and *attempted to arrange a conference* with the Contractor and the Surety . . . . (Emphasis added); and
>
> 3.2    The *Owner has declared a Contractor Default and formally terminated the Contractor's right to complete* the Contract. . . .
>
> 3.3 *The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract* or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.
>
> 4 *When the Owner has satisfied the conditions of Paragraph 3*, the Surety shall promptly and at the Surety's expense take one of the following actions . . . .
>
> * * *
>
> 12.4 *Owner Default*. *Failure* of the Owner, which has neither been remedied nor waived, *to pay the Contractor* as required by the Construction Contract *or to perform and complete or comply* with the other terms thereof (Emphasis Added).

CASE NO. _____

15.     Further, under the *Dual Obligee Rider to Contract Bond* attached to the *Bond*,

PANTERRA confirms that:

> 3. There shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety in case it [sic] arranges for completion of the Contract upon default of the Principal, ***strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner set forth*** (Emphasis added).

16.     In addition, under the *Amended Contract*, the *Bond* and/or at common law,

PANTERRA owes WFIC the duties, among others, to:

> a.     properly administer the *Amended Contract* and satisfy its duties thereunder including, but not limited to, conducting inspections of the work being performed under the *Amended Contract*, rejecting non-compliant work, and refusing payment for defective work;
>
> b.     protect the "Balance of the Contract Price" by properly paying SDC in accordance with the terms of the *Amended Contract*, and not to arbitrarily, capriciously or negligently deplete the *Amended Contract* funds that represent collateral for WFIC's potential obligation to perform under the *Bond*; and
>
> c.     comply with requisite statutory and contractual notice and cure requirements before defaulting or terminating SDC's rights to complete under the *Amended Contract*.

These duties are also implied from WFIC's suretyship status.

### *Mucenic – Owner's Authorized Representative With Actual and Express Authority*

17.     Mucenic was an authorized representative of PANTERRA, and had actual and

express authority to act on behalf of PANTERRA on the Project.

CASE NO. _____

18.     The *Amended Contract* designates Goldlist and/or Mucenic as the "Owner's representatives" for the Project.  *See* Ex. "C", *Amended Contract*, Article §14.3.  Mucenic executed the original *Contract*, the *Amended Contract,* and the original *Notice of Commencement*.

19.     PANTERRA's designation of Mucenic as the "Owner's representatives" conclusively "bind[s] the Owner with respect to all matters requiring the Owner's approval or authorization". *See* Ex. "B", *General Conditions,* Article §2.1.1.

20.     Mucenic was also designated as an "Owner's Designated Representative" in the Architect Contract between PANTERRA and the Project Architect, Revuelta Vega Leon P.A. dated January 6, 2004 (the "*Architect's Contract*").  *See Architect's Contract*, §1.1.3.1. A true and correct copy of the *Architect's Contract* is attached hereto and made a part hereof as **Exhibit "E"**.[4]

21.     Pursuant to the *Architect's Contract,* "the Owner's Designated Representative shall be authorized to act on the Owner's behalf with respect to the Project."  *See* Ex. "E", *Architect's Contract*, §1.2.2.3.  The *Architect's Contract* was executed by Goldlist on behalf of PANTERRA.

22.     PANTERRA also appointed Mucenic as its construction consultant for the Project. The *Agreement of Partnership* confirms that "Mucenic or its Affiliate have or are entering into an Agreement with the Partnership under which they will act as a consultant to the Project."   The *Agreement of Partnership* also recognizes that "[t]o the extent of any conflict with this Section 1.10 and said agreement, said agreement shall govern and prevail."  *See* Ex. "A", *Agreement of Partnership*, Section 1.10.

---

[4] *See fn.* 1.

CASE NO. _____

23.     Consistent with the *Agreement of Partnership*, as part of the construction of the Project, PANTERRA entered into a *Consulting Agreement* dated December 18, 2003 with Arrowhead Development Consultants, Inc. ("Arrowhead").   At all times material hereto, Arrowhead's sole subscriber and director was Mucenic. A true and correct copy of the *Consulting Agreement* is attached hereto and made a part hereof as **Exhibit "F"**.

24.     The *Consulting Agreement* provides that Arrowhead "shall . . . [a]ct as the owner's representative dealing with contractor, subcontractor and all other professionals who render services at the Project." *See* Ex. "F", *Consulting Agreement,* ¶3(a).

25.     Mucenic was in charge of the day to day operations of the Project.  Pursuant to the *Consulting Agreement*, Mucenic, by and through Arrowhead, was to perform construction consulting services on behalf of PANTERRA, including but not limited to:

   a.      ***Act as the owner's [sic] representative with contractor***, subcontractor and all other professionals who rendered services at the Project (Emphasis added).

   b.      Participate in the negotiation and selection process for a General Contractor for the Project and any other subcontractor, consultants and vendor hired directly by Owner.

   c.      Participate in meetings and ***supervise work of the Architect and his consultants*** and follow up and inform Owner on the progress of the design of the building (Emphasis added).

   d.      Supervise, bid and hire all professionals involved in the construction of an on-site sales office.

   e.      Participate in and ***represent Owner on all meetings and sessions related to the approval process of the Project by the City of Miami***.

   f.      ***Review all invoices submitted*** by the consultants involved in the construction of the Project, ***including monthly payment requests*** submitted by the General Contractor (Emphasis added).

-7-

CASE NO. _____

    g.    ***All other construction related services normally performed by an Owner's representative in a large residential hi-rise development*** (Emphasis added).

*See*, Ex. "E", *Consulting Agreement*, ¶3.

26.    The *Consulting Agreement* further provides that Mucenic, by and through Arrowhead, "agrees in furnishing any services to use its best skill and judgment and to perform such services in a manner *so that the Owner shall be **in compliance with all applicable laws, codes and regulations pertaining to the Project***."

### *Completion and Acceptance of Project and Subsequent Construction Dispute*

27.    PANTERRA commenced work on the Project on or about August 2005.

28.    The Project achieved Substantial Completion pursuant to Article §4.3 of the *Amended Contract* on March 1, 2008, when the City of Miami issued its *Temporary Certificate of Occupancy*.

29.    The one (1) year period of correction under Article §12.2.2 of the *General Conditions* expired on March 1, 2009.

30.    On December 24, 2008, PANTERRA and SDC entered into a *Settlement Agreement*, intending to close-out the Project. PANTERRA paid a lump sum of $598,518.98 to SDC, and agreed to the pay the balance of the outstanding debt of $664,481.02 in six (6) installment payments until fully paid. PANTERRA made the first installment payment; however, it has failed to make any subsequent payments under the *Settlement Agreement*. A true and correct copy of the *Settlement Agreement* is attached hereto and made a part hereof as **Exhibit "G"**.

31.    Following the acceptance of the Project and after the expiration of the one (1) year period of correction, PANTERRA complained about SDC's performance under the *Amended Contract*.

-8-

CASE NO. _____

32.     On or about March 20, 2009, PANTERRA attempted to comply with the requirements of Florida Statute Chapter 558 by issuing a Notice of Claim letter, enumerating alleged construction deficiencies.  PANTERRA later amended its list of alleged claims in early September 2009.

33.     It was not until June 29, 2010 that PANTERRA – *for the first time* – notified SDC of significant construction deficiencies in the concrete/masonry work.  PANTERRA identified twelve (12) specific items all relating to the construction of the CMU cell walls, with a single reference to "sawdust at a cold joint".  None of the twelve (12) alleged deficiencies had been previously included in PANTERRA's Notice of Claim letter, and as later amended.   A true and correct copy of PANTERRA's June 29, 2010 letter is attached hereto and made a part hereof as **Exhibit "H"**.

34.     As of June 29, 2010, the one (1) year period of correction under the *Amended Complaint* had expired.

35.     Despite SDC's best efforts, PANTERRA refused to allow SDC the opportunity to cure the items listed on the June 29, 2010 letter.

36.     By its  *Notice of Termination* dated December 21, 2010, PANTERRA terminated SDC's rights under the *Amended Contract*, relying on the identical concrete/masonry items listed in the June 29, 2010 letter.  A true and correct copy of the *Notice of Termination* is attached hereto and made a part hereof as **Exhibit "I"**.

CASE NO. _____

### *Performance Bond Claim – Post Completion / Post Warranty*

37.     On December 23, 2010, nearly two (2) years after Substantial Completion, PANTERRA – having terminated SDC's rights under the *Amended Contract* – made a formal demand upon WFIC under the *Bond* in excess of $75,000.

38.     At the time of the demand, the Project had been accepted and completed, and all applicable warranties had expired.

39.     Article §12.2.2.1 of the *General Conditions* provides that "[d]uring the one-year period of correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty."

40.     All twelve (12) items enumerated in the *Notice of Termination* were patent at the time of construction, and readily observable upon a reasonable inspection.

41.     PANTERRA accepted the Project and fully paid SDC under the *Amended Contract*, less the remaining balance under the *Settlement Agreement*, knowing that the alleged construction deficiencies existed.

### *PANTERRA's "Owner Default" – Admissions in the Mucenic Complaint*

42.     PANTERRA failed to pay SDC as required by the *Amended Contract* and failed to perform and complete or comply with the other terms of the *Amended Contract*, by:

> (a)     failing to properly administer the *Amended Contract*, failing to conduct reasonable inspections of the work being performed under the *Amended Contract*, rejecting non-compliant work before making payment for same, and refusing payment for defective work;

-10-

CASE NO. _____

    (b)    failing to properly protect the *Amended Contract* funds by allowing them to be depleted, improperly paying for allegedly defective work; and

    (c)    failing to comply with requisite statutory and contractual notice and cure requirements before defaulting or terminating SDC's rights to complete under the *Amended Contract*.

43.    PANTERRA admits that its authorized representatives, Mucenic, Blackstone and Arrowhead, failed to properly administer the *Contract* on behalf of PANTERRA in its action styled *Panterra Developments, et al. v. Ricardo Mucenic, et al.* (Case No. 09-93756 CA 27), pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade Circuit Court, Florida (the "*Mucenic Complaint*"). A true and correct copy of the *Mucenic Complaint* (without exhibits) is attached hereto and made a part hereof as **Exhibit "J"**.

44.    PANTERRA acknowledges in the *Mucenic Complaint* that it intended to rely upon Arrowhead and Mucenic "to act as a representative of PANTERRA" with SDC in the administration of the *Contract. See* Exhibit "J", *Mucenic Complaint*, ¶34.

45.    PANTERRA admits in the *Mucenic Complaint* that Arrowhead breached the *Consulting Agreement* by taking actions and/or inactions, specifically including but not limited to the following:

    a.    Failing to use its best skill and judgment in acting as PANTERRA's representative with the general contractor, subcontractors and/or all other professionals who rendered services on the Project, by, without limitation, not ensuring their strict compliance with building code provisions, contract requirements and plan documents;

\* \* \*

CASE NO. _____

c.    Failing to use its best skill and judgment in participating in meetings and supervising the work of the architect of the design of the building, by, without limitation, not ensuring strict compliance with contract and/or plan documents in the design of the building;

d.    Failing to use its best skill and judgment in participating in and representing PANTERRA at all meetings related to the approval process of the Project by the City of Miami, by, without limitation, failing to ensure that the general contractor, subcontractors and/or all other professionals who rendered services on the Project utilized due care, diligence and strict compliance with building code provisions, contract requirements, and/or plan documents in the design of the building;

e.    Failing to use its best skill and judgment in reviewing all invoices submitted by the general contractor, subcontractors, consultants and/or vendors involved in the construction of the Project, including monthly payment requests submitted by the general contractor by, without limitation, failing to verify the accuracy and requiring the strict compliance of the invoices submitted for payment to PANTERRA;

* * *

g.    Failing to use its best skill and judgment in acting as PANTERRA's representative by, without limitation, executing unit acceptances with full knowledge of the numerous defects contained within each unit;

h.    Failing to use its best skill and judgment in acting as PANTERRA's representative by, without limitation, approving and payment for work orders from Soares Da Costa CS, LLC for work that was not performed and/or improperly performed and/or otherwise invalid; [and]

i.    Failing to use its best skill and judgment in acting as PANTERRA's representative by, without limitation, accepting work from Soares Da Costa CS, LLC that did not meet acceptable standards of the South Florida Building Code and/or the Contract Documents, plans and specifications in this matter to the benefit of Arrowhead and Soares Da Costa CS, LLC to the detriment of PANTERRA.

See Exhibit "J", *Mucenic Complaint*, ¶34.

-12-

CASE NO. _____

### *PANTERRA's "Owner's Default" – By and Through its Design Professionals*

46.     PANTERRA, by and through the Project Architect, was required to properly "provide

administration of the Contract" as set for in the *Amended Contract* and *General Conditions*.  For

purposes of the administration of the *Amended Contract*, the Project Architect is deemed to be an

"Owner's representative." *See* Ex. "B", *General Conditions*, Article §4.2.1.

47.     As part of its responsibility for contract administration, the Project Architect is

required and/or authorized to, among other things:

      a.     Visit the Project at appropriate intervals to become familiar with the
work and to keep PANTERRA informed about its progress and
quality;

      b.     "Guard the Owner" against defects and deficiencies;

      c.     Determine if the work being performed complies with the
requirements of the *Amended Contract*;

      d.     Evaluate SDC's applications for payment and certifying the amounts
due to SDC for performance of the *Amended Contract*;

      e.     Require inspection or testing of SDC's work; and

      f.     Reject work performed by SDC which does not conform to the
requirements of the *Amended Contract*.

*See* Ex. "B", *General Conditions*, Article §§4.2.2 and §4.2.5.

48.     As part of evaluating payment applications, the Project Architect certifies that "the

Work has progressed to the point indicated and that, to the best of the Architect's knowledge,

information and belief, the quality of the Work is in accordance with the Contract Documents." *See*

Ex. "B", *General Conditions*, Article 9.4.2.  The Project Architect may withhold a certification for

CASE NO. _____

payment "to the extent reasonably necessary to protect the Owner." *See* Ex. "B", *General Conditions*, Article 9.5.1.

49.     Pursuant to the *Architect's Contract*, the Project Architect had allocated up to thirty (30) site visits/inspections during the course of performance. *See* Ex. "E", *Architect's Contract*, Articles 2.6.2.1 and 2.8.1.2.

50.     Additionally, the *Architect's Contract* requires the Project Architect to "report to the Owner known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor. *See* Ex. "E", *Architect's Contract*, Article 2.6.2.2.

51.     PANTERRA failed to comply with the obligations as set forth in paragraph 47, above, as well as the implied duty of good-faith and fair dealing in the administration of the *Amended Contract*, including but not limited to PANTERRA's obligations to: (a) properly inspect SDC's work before making payment therefore; (b) reject non-compliant work; and (c) if necessary, to withhold payments for known deficiencies.

### *PANTERRA's "Owner's Default" – Failure to Comply with Notice and Cure Obligations*

52.     PANTERRA failed to comply with its obligations under the *Amended Contract*, including those set forth in the *General Conditions* by failing to provide SDC with an opportunity to cure any alleged construction deficiencies and failing to procure a certificate from the Project Architect certifying that "sufficient cause exists" to justify termination. *See* Ex. "B", *General Conditions*, Article 14.2.2.

53.     PANTERRA also failed to comply with its statutory obligations under Florida law, specifically including but not limited to Chapter 558, *Florida Statutes*. PANTERRA's has not issued

CASE NO. _____

a Chapter 558 Notice of Claim specifically addressing the twelve (12) items upon which PANTERRA basis its default and termination of SDC under the *Amended Contract*.

54.    PANTERRA has failed to comply with the conditions precedent to WFIC's performance under the *Bond,* as PANTERRA has failed to fulfill its obligations under the *Contract,* and has otherwise materially breached the terms and conditions of the *Bond.*

**COUNT I –**
**DECLARATORY RELIEF**

55.    WFIC re-alleges and re-avers the allegations of paragraphs 1 through 54 hereof, as if fully set forth herein.

56.    There exists a bona fide dispute between WFIC and PANTERRA concerning the parties' respective rights and obligations under the *Bond* and the *Contract*.

57.    WFIC currently has a bona fide, actual, present and practical need for the declaratory relief requested herein.

58.    WFIC is seeking a declaration that the *Bond* had been rendered null and void due to the actions of PANTERRA, and that WFIC had and has no obligation to perform any work under the *Contract* or the *Bond*.

59.    The *Bond* should be declared null and void for the following reasons:

    a.    PANTERRA, through its wholly inadequate Project administration, knowingly accepted and paid for allegedly defective work.  Had PANTERRA performed its obligations under the *Bond* and *Contract*, the defects would have been uncovered early in the construction process and either cured by SDC or promptly remedied by WFIC should PANTERRA have made a timely demand under the *Bond*;

    b.    PANTERRA allowed the *Contract* funds to be depleted by knowingly paying for defective work.  Due to WFIC's suretyship status, the *Contract* funds are collateral to secure WFIC's costs of performing

CASE NO. _____

pursuant to the *Bond*. PANTERRA's depletion of the *Contract* funds impairs WFIC's suretyship status by depriving it of the collateral and discharges WFIC's obligation under the *Bond*;

c.     PANTERRA has failed to comply with the default and termination provisions of the *Amended Contract* in that, among other things, it has failed to procure the requisite certification of the Architect supporting the termination, failed to provide the requisite statutory and contractual notices, and failed to provide SDC an opportunity to cure the construction deficiencies listed in the June 29, 2009 letter.

60.     As a result of such conduct, PANTERRA has breached the terms and conditions of both the *Contract* and the *Bond*, rendering same null and void.

61.     Moreover, WFIC has no obligation under its *Bond* to remedy an alleged default where PANTERRA's authorized representatives, with actual and express authority, accepted and paid for the allegedly defective work.

62.     Furthermore, PANTERRA has waived its right to require correction and to make a claim for breach of warranty under the *Amended Contract* and the *Bond*. WFIC's only potential liability for post-completion and post-warranty claims would be for latent defects. The items enumerated in the *Notice of Termination* are "patent" in nature. PANTERRA concedes in the *Mucenic Complaint* that the authorized representatives of PANTERRA were aware of the alleged construction deficiencies and accepted the work.

CASE NO. _____

WHEREFORE, WFIC respectfully requests that this Honorable Court enter a *Declaratory Judgment* in its favor and against PANTERRA, finding that WFIC is relieved of any further obligations under the *Bond*, awarding WFIC its attorneys' fees and costs, and awarding WFIC such other and further relief as this Court deems necessary, just and proper.

DATED this 7th day of February, 2011.

**ETCHEVERRY HARRISON LLP**
Attorneys for WFIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682

By: ___ /s/ Edward Etcheverry _____
    Edward Etcheverry
    Fla. Bar No.: 856517

L:\Clients\184 - ACE (WFIC)\1022 - SDC-Panterra\B - PLEADINGS - DEC ACTION\Complaint (v2).wpd